In Matter of ASSESSMENT OF COLLATERAL IN-
HERITANCE TAX in Estate of CHARLES
CLARK; GRACE CLARK, Appellant.

Division Two, March, 16, 1917.

1. **COLLATERAL INHERITANCE TAX: On Annual Income.** A be-
quest of an income for life, or till the legatee's divorce and re-
marriage, payable annually in monthly installments by a trustee
in such sums as he shall deem advisable and just, out of an estate
devised in trust for that sole purpose, is not subject to a collateral
inheritance tax under Secs. 309-331, R. S. 1909.

2. ————: ————: **Vested Estate: Contingency.** If property is be-
queathed to a trustee with directions to pay annually to a named
legatee such a part of the income as the trustee deems advisable
and just, the bequest vests and takes effect in immediate posses-
sion; and therefore Sec. 314, R. S. 1909, which provides that if the
estate be one wherein possession is postponed or contingent the
collateral inheritance tax shall not be due until the beneficiary
obtains possession of the property, does not impose a tax upon such
vested income.

3. ————: ————: ————: **Indefinite Amount.** If the amount of in-
come which the legatee will annually receive is impossible of ascer-
tainment, Sec. 310, R. S. 1909, affords no basis for the imposition of
a collateral inheritance tax.

4. ————: ————: ————: **Appraisement.** Since Secs. 322 and 323, R.
S. 1909, require the property to be appraised "at its clear market
value at the time of the death of decedent," those sections afford
no basis for imposing a collateral inheritance tax upon an annual
income vested *in praesenti* whose amount is indefinite in that it is
to be whatever sum the trustee may deem advisable and wise.

5. ————: ————: ————: ————: **Amount and Duration.** To determine
the present value of any limited estate, income or annuity, both
the annual amount and the duration thereof must be known; or,
the amount must be known and the duration be capable of being
averaged by the mortality tables.

6. ————: **Statutes: Construction.** Taxation statutes are to be strict-
ly construed, but not so far or so technically as to defeat the in-
tention of the Legislature. But if it cannot be said from an ex-
amination of them that the Legislature intended to impose a tax
on incomes of a certain sort, an attempted taxation of them can-
not be upheld.

In re Estate of Clark.

7. ———: ———: **Ascertainment Each Month.** To hold that the statutes provide for an ascertainment of the tax due each month from an annual income, to be paid in monthly installments, where the trustee is by the bequest to determine how much will be paid each month, is to give a violent construction to the statute, and one not warranted by its terms.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

REVERSED AND REMANDED (*with directions*).

*T. K. Skinker* for appellant.

(1) The interest of Mrs. Grace Clark in the estate of the decedent is not subject to any collateral inheritance tax, because (a) it is not a life estate or interest; (2) it may determine upon either of two events that may happen before the expiration of her life, namely, upon her marriage, or upon a suit being brought against her to subject her interest to execution for debt; (3) it is indeterminate and uncertain, depending for its value upon the discretion of the Mississippi Valley Trust Company, the trustee named in the will of the decedent. Appellant was the daughter-in-law of the decedent. Hinds v. Stevens, 45 Mo. 211; State ex rel. v. Scullin, 266 Mo. 319; Cooley on Taxation, chap. 12, p. 269; Disston v. McClain, 147 Fed. 114; R. S. 1909, secs. 310, 314; State ex rel. v. Henderson, 160 Mo. 190. (2) If her interest is liable to the tax at all, the appraisement and levy must be postponed until the expiration of her estate. Sloane's Estate, 154 N. Y. 109; Millward's Estate, 27 N. Y. Supp. 286; Babcock's Estate, 65 N. Y. Supp. 926; Meyer's Estate, 83 N. Y. App. Div. 381; Roosevelt's Estate, 143 N. Y. 120; Curtis' Estate, 142 N. Y. 219; Davis' Estate, 149 N. Y. 547; Howell's Estate, 69 N. Y. Supp. 1016; Estate of Simon, 7 Ohio N. P. 667, 39 Week. Law Bull. 369; Billings v. People, 189 Ill. 472; Howe v. Howe, 179 Mass. 546; McLemore v. Raine's Estate, 131 Tenn. 637; State v. Bridgers, 161 N. C. 246; Com. v. Cambron, 158 Ky. 577; Matter of Morss, 85 N. Y. Misc. 676; Matter of Granfield, 79 N. Y. Misc. 374;

In re Estate of Clark.

In re McLane's Estate, 142 N. W. Supp. 788. (3) The trial court erred in directing the assessment and levy of the tax on the installment plan. (a) Appellant's estate is not an expectancy within the meaning of Sec. 314, R. S. 1909. 2 Blackstone Com., 163; Black's Law Dict., title, Expectancy; Anderson Law Dict., title, Expectancy; 3 Words and Phrases, title, Expectancy. (b) A liberal construction of the Collateral Inheritance Tax Law is not allowable. State ex rel. v. Scullin, 266 Mo. 319; State ex rel. v. Railroad, 251 Mo. 134; State ex rel. v. Alt, 224 Mo. 513; Matter of Cager, 111 N. Y. 350; Disston v. McClain, 147 Fed. 116; Matter of Curtis, 142 N. Y. 219; Matter of Roosevelt, 143 N. Y. 120; Matter of Zborowski, 213 N. Y. 109; Stewart v. See, 21 Mo. 515. (c) Monthly sworn return not called for by said section 314. (d) Assessment cannot be made in dribblets. Matter of Howe, 112 N. Y. 100; State ex rel. v. Henderson, 160 Mo. 190; State ex rel. v. Switzler, 143 Mo. 287.

*O. M. Barnett* and *Ernest A. Green* for the curators of the University of Missouri.

The bequest in this case is to a daughter-in-law of the testator. The property passes to her by the will of Charles Clark. Sec. 309, R. S. 1909, says that "all property which shall pass by will . . . other than to or for the use of the father, mother, husband, wife, legally adopted children or direct lineal descendant of the testator . . . shall be and is subject to the payment of a collateral inheritance tax." It is, therefore, clear that the intention of the Legislature was to tax every bequest under a will which passes to a daughter-in-law. It is the duty of a court to construe the provisions of a statute so as, if possible, to give effect to the intent of the Legislature. Decker v. Diemer, 229 Mo. 324; State v. Probate Court, 112 Minn. 279. It is to be noted that if the State is to be at all sure of collecting the tax, it is absolutely necessary that the same be paid upon each installment as it is delivered over. No lien exists by which the State can protect itself, and, furthermore, the

will itself, by its very terms designates the payments to be made to Mrs. Clark to be such as the trustee may deem advisable for her support. Therefore, if the trustee is correct in its judgment as to the amount necessary for her support, she will spend all the money which is paid to her, and at the conclusion of her tenancy there will be nothing left out of which to pay the tax. Authorities upon inheritance tax statutes seem to unite on the proposition that in cases of this sort it is not necessary to defer the collection of the tax until the expiration of the estate, but on the other hand that it is proper to collect the same upon each payment as it is made. Blackmore and Bancroft on Inheritance Tax, page 186; State ex rel. v. Probate Court, 100 Minn. 192; State ex rel. v. Probate Court, 112 Minn. 279.

FARIS, J.—This is an appeal from the circuit court of St. Louis County in a proceeding commenced originally in the probate court of that county to appraise the interest of Grace Clark (hereinafter for brevity called appellant) in the estate of one Charles Clark, deceased, for the purpose of collecting the collateral inheritance tax alleged to be due thereon. The probate court found against appellant and ordered that the "Mississippi Valley Trust Company as trustee for said Grace Clark shall comply with the terms of the will of said Charles Clark with respect to said Grace Clark, and at the time of making payment of any sum of money, or its equivalent under and in compliance with the provisions of the will of said Charles Clark, deceased, by which Grace Clark is constituted a beneficiary, deduct and retain five per cent of said payment and within thirty days after such deduction pay said five per cent deduction as collateral inheritance tax under and pursuant to the provisions of sections 309 to 331 of the Revised Statutes of Missouri for 1909, to the collector of revenue of the county of St. Louis, and State of Missouri, which said five per cent of said payment or payments is hereby levied, assessed and fixed by the court as the inheritance tax payable under said sections to the State of Mis-

souri.'' Said probate court further ordered in and by its judgment that as to all sums theretofore paid out by the Mississippi Valley Trust Company as trustee, if said sums had been paid for as much as thirty days, said trustee should pay to the collector of St. Louis County five per cent. thereon.

Upon appeal to the circuit court of St. Louis County the order of the probate court in the case was affirmed. But said circuit court, however, went a little more into detail in its judgment and among other things pertinent made findings and ordered thus:

''The court doth further find from the evidence that prior to the date on which this appeal was to it submitted, an aggregated sum of $5,416.66⅔, consisting of thirteen monthly payments of $416.66⅔ each, beginning May 18, 1912, and including the payment of May 18, 1913, had been paid by said Mississippi Valley Trust Company under the terms of the will of Charles Clark to Grace Clark, and the court doth assess the value of each of said payments at $416.66⅔, and doth levy thereon a collateral inheritance tax of $20.83⅓, and in the aggregate doth levy a collateral inheritance tax of $270.83 upon said aggregate sum of $5416.66⅔, which sum of $270.83 the court doth order and adjudge that said Mississippi Valley Trust Company shall forthwith pay to the collector of the revenue of St. Louis County, Missouri. *The assessment of all further payments to Grace Clark under said will and the levy of collateral inheritance tax thereon is hereby postponed until the times hereinabove specified, at which the amounts of said payments may be determined.* It is ordered and judged that appellant, Grace Clark, pay the costs and charges herein incurred on the appeal to this court.'' (Italics ours.)

From this order and judgment of the circuit court of St. Louis County the appellant, after the usual motions, appealed.

The facts upon which the case turns, outside of the bare statement of the steps taken and the results thereof, will fully appear in the provisions of the will of said

Charles Clark, deceased, who in his life time was the father-in-law of appellant. Dying, said testator left a will wherein and whereby certain provisions were made for the support of appellant during her life, unless and until she married again. These provisions we will set out in full in our discussion of the case, wherein they will be more apposite to an understanding than if they were set forth here.

It is fairly clear that two questions are presented by this appeal: (a) Does appellant come within the class of legatees whose legacies are chargeable? (b) Is the provision for her, or the bequest which she takes, such a one as the statute makes taxable, and if so how and when by statute must payment of the tax be made?

I. Is the provision made for her within the class of bequests, or estate, or incomes, which the statute makes chargeable with this tax?

The provisions of the will of testator, Charles Clark, pursuant to which appellant takes the estate, or provision about which this controversy revolves, are abridged and set out in appellant's brief thus:

Taxation of Income.

"Clause 8 provides that, after the payment of certain special legacies, the estate shall be divided into two parts. One-half of the estate is to be held by the Mississippi Valley Trust Company as trustee for the use and benefit of Lewis Vaughan Clark and Mrs. Grace Clark, his wife, upon the trusts named in that clause. Omitting details in regard to management of that estate, clause 8 proceeds:

"The net income deriving (derived) from the trust estate is intended for the support and maintenance of my son, Lewis Vaughan Clark and Grace Clark, his wife, during their lives and the life of the survivor of them, and to such issue as may be born of their marriage or any subsequent marriage of my said son, Lewis Vaughan Clark, during the minority of such issue.

"The said trustee, from the net income derived from the trust estate as aforesaid, shall annually pay in equal

monthly installments during the lives of said Lewis Vaughan Clark, and Grace Clark, and to each, severally and separately, in such proportions as it may deem advisable and just, for their joint and separate support, considering their joint or several comfort, necessities and station in life, such part or all of said income, as it may determine to be necessary.

"In the event of the death of my son, Lewis Vaughan Clark, Grace Clark surviving him, leaving no issue by their marriage or any subsequent marriage of my said son Lewis Vaughan Clark, such part or all of the income as said trustee may deem necessary or reasonable or just for her support and maintenance, considering her circumstances and station in life, shall be paid to her at all times as such trustee may determine. If issue, either by the present or any subsequent lawful marriage of my said son, Lewis Vaughan Clark, should survive him also, then such income shall be apportioned by said trustee between such issue and said Grace Clark, until her death and the attainment of majority by the youngest issue aforesaid, as such trustee may, in its judgment, determine.

"While in this paragraph eighth of this will, I have heretofore provided for the said Grace Clark during her life, it is my will and I direct that, if she should marry again after the death of my son, Lewis Vaughan Clark, or after a legal separation between them, then at the time of her marriage, her interest in the trust estate shall end, with the same effect as if she had died.

"The beneficiaries shall not encumber and sell or convey or in any manner anticipate his or her interests in the trust fund, principal or income, and any such sale, transfer, assignment, or encumbrance shall be utterly void; and if any creditor attempt by suit or otherwise to subject the interest of any beneficiary to the payment of any of the debts of such beneficiary, then and thereafter the trustee shall not be obliged to make payments as hereinbefore provided, to such beneficiary or beneficiaries respectively, but during the rest of the period during which the trust is to continue, may in its

discretion apply such sums, or such part thereof as it thinks reasonable, for the support or comfort of the beneficiaries, or the family of the beneficiaries, respectively. The trustee shall semi-annually render to the beneficiaries a written statement and account of the transaction of the trust estate during the preceding half year.''

There are certain codicils attached to the will, which deal with the interest of testator's son Lewis Vaughan Clark, the husband of appellant, but counsel seem to take the view, in which after a careful reading we acquiesce, that these codicils do not in any material wise affect the provision made for appellant. We might say in passing that one provision of these codicils emphasizes the view, which, however, we understand counsel for appellant to concede, that the trustee was to deal separately and not jointly with the proceeds of the trust estate, that is, that it was to pay to appellant and to said Lewis Vaughan Clark each a sum ''such as the trustee may deem advisable for his or her support.'' The codicil referred to simply commutes the sum which may be paid from any source (including an income from his deceased mother's estate) annually to Lewis Vaughan Clark *for his separate support* at a total of $6000. Since any residue goes back into the corpus of the trust fund the codicil's provision does not affect appellant's interest in any manner, so far as we are here concerned. In other words, and reduced to its simplest analysis, is a bequest of an income for life, or till the legatee's divorce and remarriage, ''payable annually in monthly instalments'' by a trustee ''in such sums as the trustee shall deem advisable and just,'' out of an estate devised in trust for that sole purpose, taxable under the terms of the Collateral Inheritance Tax Statutes? [Secs. 309-331, R. S. 1909.]

The will of Charles Clark, deceased, set forth certain contingencies, on the occurrence of which it may be said to be inferable that the income accruing to appellant might be increased to a sum equal to the whole income from one-fourth of the estate. But any change seemingly worked in the question stated by these con-

tingencies will on inspection be found apparent and not real, since, in all cases any increased payment by the trustee to appellant is contingent upon her necessities as interpreted by the trustee's discretion, thus leaving the entire matter as nebulous as before. In short, no subsequent contingency so modifies the situation as to render inaccurate our statement above of the ultimate question involved.

Attending now specifically to the last question put, since in the view we take of the case it may be disposed of upon that point alone: We are of the opinion that the income here provided for appellant vests in possession at once. Its taking effect as a bequest of an income is not postponed to the happening of any contingency whatever; it does not depend upon the falling in of any prior estate for either life or years, nor is it a remainder. It takes effect in immediate possession, just as, in all respects and just as surely as, any other devise or bequest of an estate in trust, wherein the income alone is to be paid to the *cestui que trust*. Only the amount of the income and the duration of the right to enjoy it are doubtful, or subject to be either changed or defeated—short of appellant's death—by contingencies. The contingency of duration for life or less, can be defeated only by appellant's own voluntary act; that of uncertainty of amount of the annual income depends upon the judgment (*semble,* to be exercised annually) of the trustee as to the amount which will be required for the support of the appellant.

Even a casual reference to the question presented in the light of the statute shows clearly that there has been no method provided by the Legislature fixing the time, or manner of the collection of an inheritance tax on this sort of income. [Secs. 310 and 314, R. S. 1909.] The two sections last-above cited contain all of the legislative methods devised to that end. Section 310, supra, provides the manner in which these taxes are to be collected upon bequests vesting in immediate possession; but a mere casual examination of this section shows that it can not be applied to the facts before us. Here the cor-

pus of the estate vests in the trustee. Part of the income is to be used for the support of Lewis Vaughan Clark and part for the support of the appellant. But not necessarily is all of the income from one-half of the whole estate to be used for both, or an equal half thereof to be used for appellant; only such part of the whole estate (one-half in fact of what testator left) is to be used for appellant (and to make up for Lewis Vaughan Clark a total annual income of $6000, as above said) as her necessities may require, according to the best judgment and discretion of the trustee. The residue of the income, after deducting the amount contingently applicable to appellant's use, goes back to the corpus of the estate. So, the amounts which appellant will receive annually are impossible of ascertainment. Likewise, the duration of the payment of this unascertainable sum is impossible of determination. If it were for the life of appellant, and the annual sums necessary for her support known, no difficulty would be presented. A mere computation according to the mortality tables, would settle it. It is plain to be seen that collection can not be made upon any basis, pursuant to the provisions of section 310.

Looking at the facts presented in the light of section 314, we also meet insuperable difficulties. This section in pertinent substance provides that if the estate be one wherein possession is postponed, or contingent, the tax shall not be due till the beneficiary gets possession of the property, and shall be assessable upon the value coming into possession. But we have seen that here possession is neither postponed nor contingent. Possession, that is the right to the income, is *instanter;* duration of enjoyment alone is contingent and liable to defeat. Besides, in order to thus secure deferment of assessment and collection (present collection on a just and equitable basis under section 310, being as above shown, impossible) and as a condition precedent to deferment of instant payment, the trustee must make and file a bond (section 310, supra), in three times the amount of the tax. In case of a failure so to file a bond,

the tax becomes immediately due and payable, and in such event is then to be reckoned "on the clear market value of the estate." Since, as we have tried to make plain, the clear market value of the estate is impossible of ascertainment, as is likewise the annual amount of the income and the duration of the payment thereof, it is neither possible to fix the amount of the bond, nor to ascertain the amount of the tax on the clear market value of the estate.

While sections 322 and 323 of this statute may upon casual inspection seem to provide an equitable working plan by which to fix and levy this tax on appellant's income, a more careful examination of the above sections discloses the fallacy of this view. Section 322, supra, provides *inter alia* that the probate court "shall, as often and whenever occasion may require, appoint a competent person as appraiser, to fix the valuation of estates which shall be subject to the payment of any tax imposed by this article." But coming to an actual appraisement such appraiser is, by further provisions of this section, required to appraise the property "at its clear market value, at the time of the death of the decedent." Under the facts before us we have seen that such an appraisement is here impossible.

Pursuing the matter of appraisement further, section 323, supra, provides that upon the coming in of the appraiser's report the probate court having before him an appraisal fixing the value of the property "at the clear market value at the time of the death of the decedent," shall proceed to fix the cash value of the estate and assess the amount of tax to which it is liable. This section further provides for the determination of the value of "every limited estate, income, interest or annuity dependent upon any life or lives in being by the rule, method and standards of mortality and value which are employed by the superintendent of the insurance department in ascertaining the value of policies of life insurance and annuities." The mere statement of the above rules providing for the appraisement of the property and for the manner of fixing the tax due thereon

shows the utter futility of attempting to apply it to the facts in hand. For we know as well as any actuary could know, that in order to determine the present value of any limited estate, or income, or annuity, both the annual amount and the duration thereof must be known; or, the amount must be known and the duration be capable of being averaged by the mortality tables. Here both of these facts are unascertainable and it manifestly follows that the provisions of neither of the two above sections can be made to apply to the facts in the instant case.

Statutes by which the State taxes the property of the citizen are to be strictly construed. [Blakemore and Bancroft, Inheritance Taxes, 32; Matter of Enston, 113 N. Y. 174; Matter of Vassar, 127 N. Y. 1; 37 Cyc. 1556.] This rule is not, however, to be followed so far and so technically as to defeat the intention of the Legislature. [State ex rel. v. Switzler, 143 Mo. 287.] But the case presented is so palpably a *casus omissus*, that it can not be said that the Legislature had any intention to tax an income of that sort here under discussion, otherwise they would have provided some fair and equitable way to do so. No method of taxing this income can be found in these statutes anywhere, which even measurably fits the facts confronting us.

Concerning the Collateral Inheritance Tax Statutes of the State of New York of 1885, from which State our own statutes were largely taken, and of which they are substantial rescripts (Laws New York, 1887, chap. 713, p. 921 et seq.), in a case wherein the impossibility of enforcing the collection of the tax upon a similar so-called expectancy *was urged as rendering the whole law unconstitutional,* the New York Court of Appeals said:

"The learned brief submitted by Mr. Hun, on the part of the appellants, points out many imperfections in this act, and shows that there will be great embarrassment and difficulty in executing the act in the cases of contingent remainders and expectant estates, and in some other cases. The criticisms made by him upon the act are well worthy of the attention of the Legisla-

ture. But even if in some of the respects pointed out by him it should be found that the act is inoperative and impracticable, yet on that account we see no reason for condemning the entire act. If it should be wholly inoperative in cases of contingent and expectant estates and in some other cases mentioned by him, yet it can operate without difficulty or embarrassment in the great majority of cases coming within its purview; a majority of persons having property die intestate, and a majority of those disposing of property by will do it by simple bequests or devises, and the cases of contingent and expectant estates are not very common. There is no reason, therefore, for condemning the whole act because possibly in some cases it could not have operation according to the intent of the Legislature." [Matter of McPherson, 104 N. Y. 1. c. 324.]

The judgment *nisi* provided for the ascertainment of the tax due each month, bottomed upon the sum which the trustee should in its discretion decide to pay appellant for her support for that month. For, so runs the memorandum filed below: "Then it becomes known and certain and the amount of the tax is also then known and can be determined by the court, and is required by the law to be deducted and withheld and paid in thirty days by the trustee to the collector." We have shown that no statutory method has been provided, or exists by which the situation here presented is in any sense met, so that the plan adopted below is the result of the most violent construction. Such violence of construction we do not deem warranted in order to enforce a statute operating *in invitum,* as this and other taxing statutes do.

It is manifest that such a method of ascertainment and payment of the amount of tax due would be expensive in fees and burdensome in the extreme. Learned counsel for appellant insist that the monthly outlay in probate court fees necessitated by the order *nisi* would be $4.45 upon a total monthly tax, as developed by past experience in this case, of $20.83. In short, the costs entailed in fees would amount to more than twenty per

cent of the monthly tax. Whether learned counsel is in error or not as to·the mathematics of his argument, it is plain that such an order, when nowhere provided for by the statutes, is too inequitable and unjust to sanction; and 'that the rule which enjoins upon us the duty to enforce the intention of the Legislature (in·collecting this tax, not in selecting those liable to pay it), is not so flexible as to embrace a case so flagrant as this. The law does not require us to leave the statute and go into the field of invention to find a way to tax this income.

The remedy lies with the Legislature. The statutes of 1887 of the State of New York, from which our statutes on the subject largely come, have been so many times re-written and amended since we adopted this ancient law upon the subject as seemingly to permit (since the case of Matter of McPherson, supra, was decided) the taxing of an income similar to the one under discussion. Likewise, is this also the case in many other jurisdictions. [Cf. State ex rel. v. Probate Court, 112 Minn. 279; Crompton's Estate, 10 Pa. County Ct. 443; Chisholm v. Shields, 67 Ohio St. 374; People v. McCormick, 208 Ill. 437; In re Babcock, 81 N. Y. App. Div. 645; Billings v. People, 189 Ill. 472; Howe v. Howe, 179 Mass. 546; Matter of Sloane, 154 N. Y. 109.] But the condition of our statute regarded, to hold the income here involved as liable to this tax would necessitate so violent a construction of our statute as to amount to judicial legislation.

Having reached this conclusion we need not concern ourselves with the other questions reserved for discussion, since this one disposes of the case.

It results that the case must be reversed and remanded with directions to the court *nisi* to enter judgment for the appellant. Let this be done. All concur.