Maguire v. University.

---

In re Estate of CHARLES T. REMME; JAMES H. MAGUIRE et al., Appellants, v. UNIVERSITY OF MISSOURI.

Division One, July 2, 1917.

1. **INHERITANCE TAX: Tax on Transmission of Property,** The constitutional principle upon which an inheritance tax rests is that it is not a tax upon property, but only on the transmission of property, either by operation of law or by wills or gifts, to take effect upon death.

2. ———: **Lien on Remainders.** The statute (Sec. 314, R. S. 1909) does not fix a lien except upon the definite property existing when the future limitation over after the expiration of the life estate shall vest in the remaindermen.

3. ———: ———: **Power in Trustee to Sell.** The statute does not affect with a lien the property given to a trustee for the life of testator's wife, with remainder over to named nephews and nieces, and with power in the trustee to sell the real estate and

reinvest in other property, in such a way as to disable the trustee from exercising the power to sell. If the trustee is not given the power to sell, the lien attaches upon the death of the testator; if such power is given, the lien does not attach until the property has assumed its final form at the termination of the trust. Given the power to sell the trustee can sell and convey lands devised to him in trust, free from any lien against the purchasers.

4. ———: Future Estates. The statutes (Secs. 314 and 309, R. S. 1909) impose an inheritance tax upon future estates, whether the succession is created by will or by grant or results from intestacy.

5. ———: ———: Inheritance. An inheritance is a succession to all the rights of the decedent, and includes that which arises by will or grant or that which arises by operation of law.

6. ———: Assessment Prior to Possession of Remainder: Bond. Assessment of the inheritance tax on remainders can be made prior to the time of the vesting in possession of the property in the remaindermen. Such an assessment is a tax on the succession and not on the property. And so much of the statute as requires the remainderman to give a bond for the payment of the tax when the right of possession shall have accrued is valid.

Appeal from St. Louis City Circuit Court.—*Hon. Kent K. Koerner,* Judge.

AFFIRMED.

*Marion C. Early* for appellant.

(1) Sec. 314, R. S. 1909, does not apply to future estates created by will, as is the case here. R. S. 1909, secs. 309, 316, 8057. (2) Uncertain future estates can be assessed only as they come into possession. Vanderbilt v. Eidman, 196 U. S. 480; In re Curtis, 142 N. Y. 219; In re Roosevelt, 143 N. Y. 120; In re Hoffman, 143 N. Y. 327; In re Westcott, 33 N. Y. Supp. 426; Billings v. People, 189 Ill. 472; People v. McCormick, 208 Ill. 437; Bailey v. Drane, 96 Tenn. 16; State ex rel. v. Probate Court, 112 Minn. 279; State ex rel. v. Switzler, 143 Mo. 287; State ex rel. v. Henderson, 160 Mo. 190. (3) The beneficiaries of the will, whom it is attempted to tax now have interests that may never vest in possession. R. S. 1909, sec. 336. (4) If the realty is sold under the power in the will, the purchaser's title is not subject to the lien, which attaches to the pro-

ceeds of the sale in the trustee's hands. Brown v. Realty Co., 133 N. Y. App. Div. 753. Estate of Brown, 5 Pa. Dist. 286.

*Orville M. Barnett* and *Ernest A. Green* for respondent.

(1) The widow has but a life estate in the residuary estate of the testator, and the collateral heirs receive the remainder therein. Walton v. Drummond, 152 Mo. 489; Burnett v. Burnett, 244 Mo. 498; Sec. 314, R. S. 1909. (2) Inasmuch as ultimately collateral heirs of the testator receive the remainder in the property devised to them, and inasmuch as they have given no bond as required by Sec. 310, R. S. 1909, the tax is immediately assessable and payable. Secs. 309, R. S. 1909; 37 Cyc. 1574; In re Kingman. 220 Ill. 563; Ayers v. Title Co., 187 Ill. 42; In re Vanderbilt, 172 N. Y. 69; Matter of Huber, 86 N. Y. App. Div. 458, 83 N. Y. Supp. 769; Matter of Post, 85 N. Y. App. Div. 611, 82 N. Y. Supp. 1079; In re Clark Estate, 194 S. W. 54; Decker v. Dreiner, 229 Mo. 324; State v. Probate Court, 112 Minn. 279; State ex rel. v. Walker, 240 Mo. 722.

BOND, P. J.—I. The controversy in this case is over the construction to be given to certain clauses in the will of Charles T. Remme, who died on August 25, 1911. Said clauses are as follows:

"Fifth. After the payment of my debts and after the payment of the above mentioned incumbrances, if any, and of the foregoing legacies, I hereby give, devise and bequeath to James H. Maguire, of the city of St. Louis, State of Missouri to him in trust, all the rest, residue and remainder of my estate of every nature and kind, and wherever situated, to him said James H. Maguire, in trust for the following uses and purposes herein declared and set forth and none other, that is to say:

"In trust that he, the said James H. Maguire, in trust shall hold, manage, use and control, rent, lease, sell and convey, invest and re-invest my entire estate so held in trust as to the said trustee shall seem best, wise and prudent, and with the full authority and power vested in said

trustee, to do any and all things that to him may seem best to further the objects of the trust estate herein created.

"Said trustee shall hold, use, manage and control my residuary estate given and devised to him in trust, by this will, for the benefit, use and enjoyment of my beloved wife, Maud M. Remme, for and during her natural life, and shall pay and turn over to her, the said Maud M. Remme, for her maintenance, support, benefit, use and enjoyment, the entire interest, rents, dividends and income of every nature of and from my said residuary estate given and devised in trust as aforesaid. Said payments shall begin immediately upon my death and shall be made at regular periods, from time to time, in installments, and, if possible, on the first day of each month, for and during the natural life of her, the said Maud M. Remme.

"Should said trustee sell any of the real estate held by him in trust under the provisions of this will, then I direct that he shall immediately thereupon reinvest or put out in some profitable manner and from (form) the entire proceeds of and from any such sale or sales.

"Sixth. Upon the death of the said Maud M. Remme the trust hereby created shall cease and all property of every kind, character and description then on hand belonging to said trust, and all evidences thereof, and including, also, all money held from the interest, rents and income and not theretofore paid over to the said Maud M. Remme, shall be paid and turned over to Frank Cummings, Edward Cummings and Stella Cummings, of the city of St. Louis and State of Missouri, children of my sister, Kate Cummings, or to their heirs at law *per stirpes,* share and share alike, absolutely and forever."

The will was duly probated and during the administration of the estate the collector of the revenue of the city of St. Louis applied to the probate court for the appointment of an appraiser to examine and fix the amount of collateral inheritance tax which should be assessed against the estate. The appointment and appraisal were duly made and the court, after examination of the report submitted and filed, found the cash value of the shares of

the three remaindermen to be $22,911.45, and the tax, if paid at once, to be $1145.56, or, in the event bond was given, found the cash value to be $50,025 and the tax to be $2501.25. A motion was then filed to set aside this assessment and upon the motion being overruled, the legatees appealed to the circuit court which affirmed the judgment of the probate court and sustained the validity of the assessment of the tax, and the case comes here on appeal from this judgment by the legatees, their contention being that Section 314, on which this proceeding is based, does not apply to future estates created by will; that no assessments can be made as to future estates created by will; that no assessments can be made as to future estates until they come into possession; that there can be no lien until assessment of the tax against ascertained parties; that whatever lien there may ultimately be for this tax attaches to the trust funds in the hands of the trustee in the shape it has at the life tenant's death; that the trustee can convey a title free of lien.

II.   The wisdom and policy of inheritance taxation have been illustrated for more than two thousand years. It first took root in the Roman law in the form of a five-per-cent tax on certain collaterals at the suggestion of Augustus Caesar (1 Gibbon's Decline and Fall of Roman Empire [Milman's Ed.] pp. 191, 192.) and

**Lien.**

has spread over Europe and the United States of America. [Knowlton v. Moore, 178 U. S. 41; Snyder v. Bettman, 190 U. S. 249; State ex rel. v. Henderson, 160 Mo. 190; Knox v. Emerson, 123 Tenn. l. c. 417; State ex rel. v. Bazille, 97 Minn. l. c. 14; State v. Pabst, 139 Wis. 561; Vanderbilt v. Eidman, 196 U. S. 480; U. S. v. Fidelity Tr. Co., 222 U. S. 158; People v. Byrd, 253 Ill. 221; State ex rel. v. Probate Court, 112 Minn. 279; Wingert v. State, 98 Atl. 224; Stengel v. Edwards, 98 Atl. 424; Matter of Vanderbilt, 172 N. Y. 69; Bell v. Bank, 188 Mo. App. l. c. 389; Ross, Inheritance Taxation, p. 17, sec. 9.]   The constitutional principle upon which this excise or duty rests is that it is not a tax upon property, but only on the transmission of property. either by operation of law,

or wills or gifts, to take effect upon ·death. ·[Ross, Inheritance Taxation, p. 25, sec. 19.]

Under the terms of the sixth clause of the will of Charles Remme, the residue of his estate in the hands of the trustee after the expiration of the express life estate created in his wife, was devised in fee to Frank Cummings, Edward Cummings and Stella Cummings, nephews and niece of the testator, or their heirs at law *per stirpes.* This language created vested remainders in the three persons named and a contingent remainder in the heirs of such of them as might die before the expiration of the life estate. [Estate of Kingman, 220 Ill. 563.] These remainders attached to whatever form and quality the estate had assumed during the trusteeship and the exercise thereunder of the power of the trustee to sell and reinvest. They did not attach to specific property which went into the hands of the trustee at the death of the testator, for other clauses of the will gave the trustee full power to change the form of the trust estate by selling the real estate and reinvesting it in other property. These terms of the will dispose of the argument of the learned counsel for appellant that the application of Section 314 of the Revised Statutes, providing that the property, subject to the tax thereon laid, should be affected with a lien from the time of the death of the testator, would disable the  trustee from exercising the power to sell given him in the instrument of trust. No such consequence can logically follow from the language of the statute, for the statute did not intend to fix a lien except upon the definite property existing when the future limitation over should vest in the remaindermen. Full effect · is given to the statute if its terms are held applicable in all cases where the property subject to remainder exists in an immutable form. So in this case, if the trustee had not been given power to sell the land, the lien would have attached upon the death of the testator, but since that power was given to the trustee, the purpose of the statute and its fair legal intendment are that the lien shall not attach until the property in trust has assumed its final form at the closure of the trust.

Neither is there any merit in the contention of the learned counsel for appellant that Section 314, Revised Statutes 1909, does not apply to future estates created by will. That section deals with taxes upon "a remainder, reversion or other estates in expectancy, real or personal," which shall have been created under the legislative authority expressed in section 309, providing for a collateral inheritance tax· of five per cent on all property "which shall pass by will, or by the intestate laws of this State from any person who may die seized and possessed of the same while a resident of this State," etc. The terms of this section expressly referred to as the basis for the provisions made in the subsequent section (314) are so plain as to leave no room for construction and only call for an interpretation of the meaning of the language by according to it the ordinary sense of the terms employed. These plainly state that both sections of the statute, the former in terms and the later by express reference to the former, provide for the liability of future estates to the tax in question whether the succession is created by a will, a grant or results from intestacy. [Knox v. Emerson, 123 Tenn. l. c. 417.] Aside from this the same result would follow from a consideration of the word "inheritance." That exact point was before the Supreme Court of Tennessee where, not having as we do an answer to it in the terms of another section of the local statutes of that State, it was held.

"Coming to us from the civil law, it is proper, therefore, as was done in the Swanson case (Swanson v. Swanson, 2 Swan, 446), to look to that law in order to ascertain the meaning attached by it to the word 'inheritance;' and in doing so it is found, as is stated in that opinion, to be 'the succession to all the rights of· the deceased. It is of two kinds—that which arises by testament, when the testator gives his succession to a particular person; and that which arises by operation of law, which is called "succession *ab intesto.*" ' [Bouvier's Law Dictionary, p. 1037.]

"Such has been the meaning attached to the word 'inheritance,' when used in our legislation with regard to

succession taxes. . . . . It is inconceivable that the framers of the Code, by this use of the term 'inheritance,' intended to confine this tax to those taking as heirs the real estate of the ancestor, or to devolutions of property by operation of law, and exclude successions by will to either personal or real estate."

Having reached the conclusion that Section 314 does not charge the assets of the estate of the testator with a specific lien at the time of his death but only fixes a lien on the corpus of the estate in the form in which it shall exist at the time of distribution it necessarily follows, from this shifting of the statutory lien, that the trustee can, prior to the end of the life estate, in the exercise of the power given to him as such sell and convey the lands devised to him free from any lien against the purchasers.

III. What has been said disposes of all the contentions of appellant except the claim that no assessment for the transfer of these remainders can be made prior to the time of the vesting of possession in the remaindermen.

With reference to this contention the statute makes answer in the following terms:

"Provided further, that the person or persons, or body politic or corporate beneficially interested in the property as aforesaid shall make a full, verified return of said property to the probate judge of the proper county and file the same in his office within one year from the death of the decedent, and within that period give a bond in form and to the effect prescribed in section 310 of this article, conditioned for the payment of said tax at such time or period as the right of possession shall accrue to the owner or the representatives of said owner as aforesaid, and in case of failure so to do, the tax shall be immediately payable and collectible on the clear market value of the estate to be determined as hereinafter provided; further, that the owner shall have the right to pay the tax at any time prior to his or her coming into possession, and in such cases, the tax shall be assessed in the manner hereinafter provided on the value of the estate at the time

of the payment of the tax, after deducting the value of the life estate or estate for years.'' [R. S. 1909, sec. 314.]

It is objected by the learned counsel for appellant that if this portion of the statute is valid, then it would result in the imposition of a tax on property and not on the succession and hence would be unconstitutional. This is a misconception of the ground upon which the right exists in the State to require these payments. Both the cases heretofore cited in this opinion and correct reasoning deduce the existence of this right in a sovereignty, from the fact that the power of succession in such cases depends upon statutes affording that privilege to the claimant, and this being in the full discretion of the enacting body is subject to any terms which it sees fit to impose. Having the plenary power to regulate the devolution of property, whether by the act of parties or by the act of law, the State is at liberty to affix any conditions to its transmission not prohibited by the Constitution. In the portion of the statute now under review, the Legislature has imposed as a condition to the heritable or testamentary rights of remaindermen, reversioners and other claimants of estates in expectancy, that the transfer taxes thereon shall be ''immediately payable and collectible on the clear market value of the estate,'' unless the beneficiary shall, within a year, give a proper bond for the payment of said tax when the right of possession shall accrue, in which event the payment need not be made until actual possession of the estate accrues. The act further provides in case of anticipatory payment of the tax the specific method for ascertaining such payment ''after deducting the value of the life estate or estates for years.'' In the case at bar the future estates of the remaindermen fall within this provision of the statute, because they are preceded by a life estate in the wife of the testator. The ascertainment of the value of that life estate is within the competency of any qualified appraiser or actuary computing the same according to the rules prescribed by statute, as is also the ascertainment of the resulting remainders. [Matter of Tracy, 179 N. Y. 501.]

We fail to discover in any of these provisions the exertion of a power not possessed by the Legislature of this State. There are certainly no constitutional inhibitions preventing the Legislature from requiring security to be given for the payment of such taxes when the transmitted estate shall fall into possession, or in default thereof a payment prior to the obtention of possession, for in so doing it but exercises the sovereign power of the State to regulate the transmission of property and estates by exscinding therefrom a tax which shall fall upon the owner, whoever he may be, when possession accrues to him. [Orr v. Gilman, 183 U. S. 278; Matter of Tracy, 179 N. Y. 501; Ayers v. Chicago Title & Trust Co., 187 Ill. 42.] The Legislature in furtherance of this act has provided what shall be done with the tax so paid over to the trustee or other holder of the estate. [R. S. 1909, secs. 317, 318.]

In the case at bar there is no omission on the part of the Legislature to provide a method of computation of the remainder estates, as was found in the MS. opinion of Division No. 2 in the matter of assessment of collateral inheritance tax in the estate of Charles Clark, deceased, Grace Clark, appellant. [In re Clark's Estate, 194 S. W. 54.] In that case a wholly uncertain and indefinite bequest was made to the daughter-in-law of the testator, whose trustee was authorized, in its discretion, to make payments until the beneficiary should marry or die. The elements of incertitude were the volition of the trustee and the duration of the interest of the beneficiary. It was impossible to make any computation as to her prospective remarriage or as to the extent to which discretion of the trustee would be moved. The point in judgment in that case has, therefore, no relevancy to the facts shown in the present case where no such barriers exist to a computation of the value of the life estate specifically provided by statute.

We hold the statute under review is valid and enforceable according to its terms and the judgment in conformity therewith is affirmed.

*Graves, J.,* concurs in separate opinion, in which *Blair* and *Woodson, JJ.,* concur.

GRAVES, J. (concurring)—I concur in the result in this case. We have held our collateral inheritance tax law valid, and that is the law under construction in this case. It will be time enough to give approval to a general inheritance tax law, if we conclude so to do, when such issue is a live question in a live case. The first part of paragraph two of my learned Brother's opinion is very broad and covers both collateral and general inheritance taxation. On the latter I do not wish to express an opinion at this time, and as I see it, I would be so expressing an opinion by a full concurrence in the present opinion. Let the question remain for a real case. "Sufficient unto the day is the evil thereof."

*Blair* and *Woodson, JJ.,* concur in these views.