JAMES G. RUTLEDGE, et al., Appellants, v. FIRST PRESBYTERIAN CHURCH OF STOCKTON. et al.

Division One, June 2, 1919.

1. **DESCENT: Children of Deceased Wife.** By the statute the children of intestate's wife by a subsequent marriage after her death take the title to land as against the descendants of intestate's deceased aunt.

2. ————: **Statute: Constitutionality: Public Policy.** The Statute of Descents, which permits intestate's lands to descend to his wife's children by a subsequent marriage, in preference to the descendants of intestate's deceased aunt, is not unconstitutional or void as against public policy, although it allows property to descend to persons not of intestate's blood, in preference to those of his blood.

3. ————: ————: **Public Policy.** Acts of the Legislature are not void as against public policy unless that policy is imbedded in some provision of the State or Federal Constitution. The public policy of the State on any given subject is found in the provisions of the Constitution and legislative acts in harmony therewith and relating to the subject. The Statute of Descents does not conflict with any constitutional provision.

4. **VALIDITY OF WILL: Attack by Persons Without Interest.** If the plaintiffs have no interest in the land in controversy they cannot attack the validity of the provision of a will devising it to a church, or invoke a ruling of the court on the point.

Appeal from Cedar Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Foulke & Brown* and *H. C. Hembree* for appellants.

(1) The court committed error in finding for the defendants Wassons, since the provision of the statute under which they claim is unconstitutional and against public policy and the evident purpose of the statute as a whole. (2) The court committed error in finding for the defendants Wassons because the third provision of Sec. 332, R. S. 1909 upon which they base their claim is void, being in contradiction of all the other provisions of said section and against its evident purpose. (3) The First Presbyterian Church of Stockton can claim no title coming through the will offered in evidence, that instrument being void because in violation of the express law, because too indefinite and uncertain to convey, there was no church or thing having legal being that could take at time of making will or since, because the defendant church is not such donee as described in the attempted will, and said defendant cannot take because it is not the church designated in the will. Douthitt v. Stinson, 63 Mo. 268; Proctor v. Board of Trustees, 225 Mo. 52; Mo. Constitution, 1820, art. 3, sec. 5; Board of Trustees v. May, 201 Mo. 360; Wells v. Fuchs, 226 Mo. 106.

*S. E. Osborne* and *Mann, Todd & Mann* for First Presbyterian Church.

(1) If appellants have no valid title it is no concern of theirs whether or not the defendants' claims are valid. Wheeler v. Land Co., 193 Mo. 291; Barkley v. Donnelly, 112 Mo. 561; Dixon v. Hunter, 204 Mo. 391. (2) It is not only competent, but the obvious duty of the trial court in an action like this, to ascertain and determine the title of all parties to the suit both plaintiff and defendant, who might have conflicting interests. Himmelberger v. Jones, 220 Mo. 190; Richards v. Coal

Co., 221 Mo. 173. (3) Plaintiffs point out no provision of the Constitution which has been violated, and point to no specific constitutional guaranty which has been denied them by the trial court. They, therefore, present no constitutional question for interpretation to this court. Carmody v. Transit Co., 188 Mo. 575; Canning Co. v. Evans, 238 Mo. 599. (4) The third division of Sec. 332, R. S. 1909, is not unconstitutional. Similar provision exists in the statutes of almost every State in the Union. We fail to find where its constitutionality has ever been questioned in any of them. We have traced this provision of our Statute of Descents and Distribution back to the Missouri Territorial Acts of 1815, and it has remained in every revision of the Territorial and State statute from that day to this. Its constitutionality has never been questioned. (a) The constitutionality of Section 350 has been assailed, not upon the ground that it was against public policy, but upon other grounds, and the right of the Legislature to provide that the husband should inherit from the wife one-half of her property even against father and mother, brothers and sisters, has been held by the court to violate no provision of the Constitution. O'Brien v. Ash, 169 Mo. 283; Waters v. Herboth, 178 Mo. 166. (b) So far from declaring the provision of any statute, giving the husband or wife the preference of inheriting over near blood relatives, to be against public policy has this court gone, that it has declared that neither the husband nor wife can by will defeat the right of the survivor to take under Sections 350 and 351. O'Brien v. Ash, 169 Mo. 283; Lilly v. Menke, 126 Mo. 190; Pullman v. Schafer, 258 Mo. 710; Rice v. Waddill, 168 Mo. 118; Straat v. O'Neil, 84 Mo. 68. (c) It is inconceivable that there can be a violation of a rule of public policy where the action is done under a legislative enactment and in accordance with constitutional provisions. Moorshead v. United Railways Co., 203 Mo. 137. The public policy of this State in regard to the

Rutledge v. Presbyterian. Church.

order in which the wife or blood relations should inherit property upon the death of the owner was conclusively settled by the Legislature when it enacted what is now . Section 332. (d) There is no vested right, of inheritance and the sole right of determining how property shall descend upon the death of the owner is vested in the Legislature which may change the order of succession at its pleasure any time before the right of inheritance becomes vested by the death of the owner. Cooley's Const. Lim. (7 Ed.) secs. 512 to 515.

*Parks & Son* for Omar Wasson and Wallace Wasson.

(1) The power of the Legislature to prescribe the right of descent cannot be denied. Such right is not a natural one. State ex rel. v. Henderson, 160 Mo. 216. (2) The law giving to husband or wife the right in the survivor's estate is constitutional. Waters v. Herboth, 178 Mo. 166; O'Brien v. Ash, 169 Mo. 283; Jarboe v. Hey, 122 Mo. 354; Graham v. Moore, 189 S. W. 1186. (3) For history of adoption of different sections of our present statutes of descents and distributions, see Perry v. Strawbridge, 209 Mo. 621. (4) Section 2 of Statute of Descents, found in 1 R. S. 1855, p. 659, has remained the same since 1855 as is shown by subsequent revisions, to-wit: R. S. 1909, sec. 332; R. S. 1899, secs. 2908, 4465; Jarboe v. Hey, 122 Mo. 354; Graham v. Moore, 189 S. W. 1186. (5) No one has a right to require another to come into court and show his title, who cannot himself show a prima-facie title, and no plaintiff is entitled to a decree declaring the claim of another invalid until he has shown that he himself has a better claim. If the plaintiff has no valid title, it is no concern of his to know whether or not the defendants' claim is valid. Wheeler v. Land Co., 193 Mo. 291. If appellant has no title, he cannot have, on his appeal, a review of the decree affecting rights of respondents as

between themselves. Ross v. Presbyterian Church, 272 Mo. 96.

SMALL, C.—This is a suit to quiet title commenced in the Circuit Court of Cedar County. There is no controversy about the facts. Both plaintiffs and defendants claim through Hugh Ross and John Ross as the common source of title. Hugh Ross owned the property in his lifetime. He was married, but never had any children. At his death in 1860, he left surviving him his wife, Caroline Ross, and his brother John Ross. By his will he devised a life estate in the property to his wife and directed that after her death the land should be sold and the proceeds be "applied to the erection of a house of worship in the town of Stockton, for the use and benefit of the Old School Presbyterian Church."

Caroline Ross elected to take the provisions made by her husband's will. She remained in possession of the property until 1910, the time of her death. John Ross was the sole heir of his brother Hugh, and upon the latter's death inherited the property, subject to the life estate of Caroline Ross and the right of the defendant church, created by the will of said Hugh Ross. Prior to the institution of this suit John Ross died intestate. He left surviving him, his widow, Jane Ross, but no children or their descendants, and no father, mother, brother or sister or their descendants.

Jane Ross subsequently married John Wasson, and the defendants Omar Wasson and Wallace Wasson are the children of that marriage. Said defendants claim that their mother, as the widow of said John Ross, inherited the property from him, and that they, on her death, inherited it from her and are the owners of it, subject to the rights of the defendant Presbyterian Church, under the will of Hugh Ross, and the decree in certain prior litigation which was affirmed by this court

in the case of Ross v. Presbyterian Church, 272 Mo. 96.

There is no controversy between the defendants themselves, but they deny that the plaintiffs have any interest in the property. The plaintiffs were not parties to said prior litigation and it is not claimed to affect their rights. They claim to own the property as the descendants of Mrs. Rutledge, who was the sister of the mother and, therefore, an aunt of said John Ross.

The court below found against plaintiffs and for defendants, and plaintiffs brought the case here by appeal.

I. The circuit court correctly decided the case. The statute governing the course of the descent and distribution of real estate (Sec. 332, R. S. 1909) provides as follows: "Third: If there be no children or their descendants, father, mother, brother or sister, nor their descendants, then to the husband or wife; if there be no husband or wife, then to the grandfather, grandmother, uncles and aunts and their descendants in equal parts."

Public Policy.

The plaintiffs in their brief admit that if this statute is valid, the plaintiffs have no title as against the defendants Wasson, because said defendants are the descendants of the surviving wife of John Ross, and the plaintiffs are descendants of an aunt of said Ross, and by the plain words of the statute, therefore, said defendants took the title by inheritance from said John Ross, and the plaintiffs have no interest therein.

But the plaintiffs suggest that the statute is unconstitutional or void as against public policy, because it allows property to descend to persons not of the blood of the ancestor, in preference to those of his blood. This contention is untenable. No provision of the Constitution is pointed out nor referred to as conflicting with this statute, and we know of none such.

This subject was carefully considered in the recent case of State ex rel. v. Guinotte, 275 Mo. 298, where

it is said, by GRAVES, J., in delivering the opinion of Court in Banc (l. c. 314): "So that under the great weight of authority we rule: (1) That the taking of property by inheritance or will is not an absolute or natural right, but one created by the laws of the sover- eign power. This court has so said (State ex rel. v. Henderson, 160 Mo. l. c. 216) . . . (3) That this right of the State to foreclose absolutely, or partially, the right to inherit by law or will, . . . is inherent in its sovereignty, which allows the State or the Nation to say what shall be done with the property owned by the citizen at the time of his death. No provision of the Missouri Constitution stays the free hand of our lawmakers as to the disposition of property owned by a citizen at the time of his death." .

To the same effect is the language of BOND, J., in his opinion in Maguire v. University, 271 Mo. 359, where he said at page 367: "Both the cases hereto- fore cited in this opinion and correct reasoning deduce the existence of this right [to impose inheritance taxes] in a sovereignty from the fact that the power of succes- sion in such cases depends upon statutes affording that privilege to the claimant, and this being in the full dis- cretion of the enacting body is subject to any terms which it sees fit to impose."

As to the contention of the plaintiffs that the stat- ute is void because against public policy, it is sufficient to say that acts of the Legislature are not void because they violate public policy, unless that policy is imbedded in some provision of the State or Federal Constitution and the public policy of the State on any given subject is found in the provisions of the Constitution and acts of the Legislature in harmony therewith relating to that subject. In this case the public policy of the State as to the right of inheritance is found in the Statute of Descents and Distribution above quoted. That statute does not conflict with any constitutional provision and

is valid.  The circuit court committed no error in following it.

II.   Plaintiffs also attack the validity of the provisions of the will of Hugh Ross in favor of the Presbyterian Church, but inasmuch as plaintiffs have no interest in the land in controversy, they have no interest in that question and cannot invoke the action of this court thereon.  [Wheeler v. Land Co., 193 Mo. 291.]

<span style="float:left">No Interest<br>in Case.</span>

The judgment of the circuit court should be affirmed, and it so ordered.  *Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of SMALL, C., is adopted as the opinion of the court; *Blair, C. J.,* and *Bond* and *Graves, JJ.,* concur; *Woodson, J.,* absent.